IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

UNITED STATES OF AMERICA,
                    Plaintiff,

                                        Criminal Action
          vs                            No. 3:20-6-1

JACKSON CURTIS MARTIN, III,
                    Defendant.

_____


          Transcript of sentencing proceedings held on Tuesday,
June 21, 2022, United States District Court, Johnstown,
Pennsylvania, before the Honorable Stephanie L. Haines, U.S.
District Court Judge.


APPEARANCES:

For the Government:          MAUREEN SHEEHAN-BALCHON, Esq.
                             US Attorney's Office
                             Penn Traffic Building
                             319 Washington Street
                             Johnstown, PA  15901
                             Maureen.Sheehan-Balchon@usdoj.gov


For the Defendant:           DOUGLAS SUGHRUE, Esq.
                             Sughrue Law
                             429 Fourth Avenue, Ste. 501
                             Pittsburgh, PA  15219
                             dsughrue@sughruelaw.com



Court Reporter:     Shirley Hall, RDR, CRR
                    U.S. Courthouse, Suite 204
                    Penn Traffic Building
                    319 Washington Street
                    Johnstown, PA  15901
                    shirleyhall_uscra@yahoo.com


Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.

1                    P R O C E E D I N G S

2        (In open court.)

3              THE COURT:  Good morning.

4              ALL PRESENT:  Good morning.

5              THE COURT:  This is the time and the place set for the

6    sentencing of Defendant Jackson Curtis Martin, III, in the

7    matter of Criminal No. 3:20-6-1.

8              I'm Judge Stephanie Haines.  And with me is my law

9    clerk, Gary Robinson; my courtroom deputy, Debbie Gorgone; our

10   court reporter, Shirley Hall; my summer intern, Eric; and

11   United States Probation Officer Stacy Miller.

12             And would counsel please enter their appearance at

13   this time.

14             MS. SHEEHAN-BALCHON:  May it please the Court, Maureen

15   Sheehan-Balchon on behalf of the United States.  At counsel

16   table with me, Your Honor, is Agent David Coleman from HSI.

17             MR. SUGHRUE:  Good morning, Your Honor.  May it please

18   the Court, Doug Sughrue on behalf of Jackson Martin, III, who

19   is seated to my left.

20             THE COURT:  Miss Gorgone, would you please administer

21   the oath to the Defendant in this case?

22             MS. GORGONE, DEPUTY CLERK:  Sure.

23             Would you please rise.  Raise your right hand.

24             Do you solemnly swear or affirm that the evidence you

25   shall give to the Court in the cause now trying shall be the

1   truth, the whole truth and nothing but the truth?

2           THE DEFENDANT:  I do.

3           MS. GORGONE, DEPUTY CLERK:  Thank you.

4           THE COURT:  Mr. Martin, do you understand that you're

5   now under oath?  If you answer any of my questions falsely,

6   those answers may later be used against you in a prosecution

7   for perjury or making a false statement.

8           THE DEFENDANT:  Yes, ma'am.

9           THE COURT:  Let the record reflect that Mr. Martin has

10  pled guilty to Counts 1 and 2 of the indictment charging him

11  with production of material depicting the sexual exploitation

12  of a minor, in violation of 18 United States Code

13  Section 2251(a) and (e).

14          He also pled guilty to Counts 3 and 5 of the

15  indictment charging him with possession of material depicting

16  the sexual exploitation of a minor, in violation of 18 United

17  States Code Sections 2252(a)(4)(B) and (b)(2).

18          It is noted that the United States Probation Office

19  has prepared a presentence investigation report and submitted

20  an addendum and the parties have both filed sentencing

21  memorandum.

22          The Court finds that the record presently before the

23  Court enables it to meaningfully exercise its sentencing

24  authority at this time.

25          Before hearing from either of the parties with regard

1    to any motions for departure from the guidelines, I will first

2    review the sentencing guideline calculations as set forth in

3    the presentence report and as also set forth in the Court's

4    tentative findings and rulings.

5            The Court notes that the Federal Sentencing Guidelines

6    are advisory and not mandatory in their application, and that

7    the 2021 edition of the manual, including amendments, will be

8    used in this case.

9            First, to address grouping, the Defendant has pled

10   guilty to four counts.  The offense level for Defendant's

11   conviction at Counts 1 and 2 is governed by Guidelines

12   Section 2G2.1, and the offense level for his convictions at

13   Counts 3 and 4 -- excuse me, 3 and 5 is governed by

14   United States Sentencing Guideline Section 2G2.2.

15           Now, pursuant to Guidelines Section 3D1.1(b), offenses

16   that are covered by guidelines 2G2.2 are to be grouped into a

17   single group, as they allege substantially the same harm.

18   Thus, Counts 3 and 5 are to be grouped into a single group.

19   However, Guidelines Section 3D1.2(d) explicitly excludes

20   offenses covered by Guidelines 2G2.1 from the guideline

21   grouping rules.

22           Accordingly, Counts 1 and 2 may not be grouped

23   together or with the group consisting of Counts 3 and 5.

24   According to this, the Court must first determine the offense

25   level applicable to each of these three groups and then

1    determine the combined offense level under 3D1.4.  So first
2    we're going to look at the offense level computation for
3    Counts 3 and 5.
4            Defendant's base offense level for the group
5    consisting of Counts 3 and 5 is 18 pursuant to 2G2.2(a)(1)
6    because he has pled guilty at those counts to possession of
7    material depicting the sexual exploitation of minors, in
8    violation of 18 United States Code Section 2252(a)(4)(B).
9            Pursuant to Guidelines Section 2G2.2(b)(2), a
10   two-level increase is warranted because the material received
11   involved a prepubescent minor or a minor who had not attained
12   the age of 12 years.
13           Pursuant to Guidelines Section 2G2.2(b)(3)(F), a
14   two-level increase is warranted because Defendant knowingly
15   engaged in distribution other than distribution as described in
16   Subdivisions (a) through (e); and this is defined in Guidelines
17   Section 2G2.2, Application Notes 1 and 2.
18           Pursuant to Guidelines Section 2G2.2(b)(4), a
19   four-level increase is warranted because the offense involved
20   material that portrays the sexual abuse or exploitation of an
21   infant or toddler.
22           Pursuant to Section 2G2.2(b)(5) of the guidelines, a
23   five-level increase is warranted because Defendant engaged in a
24   pattern of activity involving the sexual exploitation of a
25   minor from December of 2018 through November 24th of 2019.

1            Pursuant to Guidelines Section 2G2.2(b)(6), a

2    two-level increase is warranted because the offense involved

3    the use of a computer or an interactive computer service for

4    the possession, transmission, receipt, or distribution of the

5    material or for accessing with intent to view the material.

6            Pursuant to Guidelines Section 2G2.2(b)(7)(D), a

7    five-level increase is warranted because the offense involved

8    600 or more images; and, here, Defendant possessed

9    approximately 2,286 images of child sexual exploitation.

10            There are no victim-related adjustments applicable to

11    the group consisting of Counts 3 and 5.  There also are no

12    adjustments for role in the offense applicable to the group

13    consisting of Counts 3 and 5.  And there are also no

14    adjustments for obstruction of justice applicable to the group

15    consisting of Counts 3 and 5.  Therefore, the adjusted offense

16    level for the group consisting of Counts 3 and 5 is 38.

17            Do counsel agree?

18            MS. SHEEHAN-BALCHON:  Yes, Your Honor.

19            MR. SUGHRUE:  Yes, Your Honor.

20            THE COURT:  Next we're going to do the offense level

21    computation for Count 1, and this will be done separate from

22    Count 2 because these two counts, as previously stated, cannot

23    and will not group.

24            The base offense level for Count 1 pursuant to

25    Guidelines Section 2G2.1(a) is 32.

1          Pursuant to Guidelines Section 2G2.1(b)(1)(A), a

2   four-level increase is warranted because the offense involved a

3   minor who had not attained the age of 12 years.

4          Pursuant to Guidelines Section 2G2.1(b)(2)(A), a

5   two-level increase is warranted because the offense involved

6   the commission of a sexual act or sexual conduct.

7          Pursuant to Guidelines Section 2G2.1(b)(3), a

8   two-level increase is warranted because Defendant knowingly

9   engaged in the distribution of the images and videos.

10          Pursuant to Guidelines Section 2G2.1(B)(4)(b), a

11   four-level increase is warranted because the offense involved

12   material that portrays a toddler.

13          Pursuant to Guidelines Section 2G2.1(b)(5), a

14   two-level increase is warranted because Defendant was a parent,

15   relative or legal guardian of the minor involved in the offense

16   or the minor otherwise was in the custody, care or supervisory

17   control of the Defendant.  Here, the minor involved in the

18   offense was Defendant's stepdaughter.

19          There are no victim-related adjustments applicable to

20   Count 1.  There are no adjustments for role in the offense

21   applicable to Count 1.  And there are no adjustments for

22   obstruction of justice applicable to Count 1.  Therefore, the

23   adjusted offense level for Count 1 is 46.

24          Do counsel agree?

25          MS. SHEEHAN-BALCHON:  Yes, Your Honor.

1      MR. SUGHRUE:  Yes, Your Honor.

2      THE COURT:  Next we'll do the offense level

3  computation for Count 2.

4      Pursuant to Guidelines Section 2G2.1(a), Defendant's

5  base offense level for Count 2 is 32.

6      Pursuant to Guidelines Section 2G2.1(b)(1)(A), a

7  four-level increase is warranted because the offense involved a

8  minor who had not attained the age of 12 years.

9      Pursuant to Guidelines Section 2G2.1(b)(2)(A), a

10 two-level increase is warranted because the offense involved

11 the commission of a sexual act or sexual conduct.

12     Pursuant to Guidelines Section 2G2.1(b)(3), a

13 two-level increase is warranted because Defendant knowingly

14 engaged in the distribution of the images and videos.

15     Pursuant to Guidelines Section 2G2.1(b)(4)(B), a

16 four-level increase is warranted because the offense involved

17 material that portrays a toddler.

18     Pursuant to Guidelines Section 2G2.1(b)(5), a

19 two-level increase is warranted because Defendant was a parent,

20 relative, or legal guardian of the minor involved in the

21 offense or the minor otherwise was in the care, custody or

22 supervisory control of the Defendant.  And, here, the minor

23 involved in the offense at Count 2 was Defendant's

24 stepdaughter.

25     There are no victim-related adjustments applicable to

1    Count 2.  There are no adjustments for role in the offense

2    applicable to Count 2.  And there are no adjustments for

3    obstruction of justice applicable to Count 2.  Therefore, the

4    adjusted offense level for Count 2 is 46.

5              Do counsel agree?

6              MS. SHEEHAN-BALCHON:  Yes, Your Honor.

7              MR. SUGHRUE:  Yes, Your Honor.

8              THE COURT:  Okay.  Next we're going to look at the

9    multi-count adjustment.

10             Pursuant to Guidelines Section 3D1.4, the combined

11   offense level is determined by taking the offense level

12   applicable to the group with the highest level and increasing

13   that offense level by the amount indicated in the table set

14   forth in 3D1.4.

15             Here, the highest adjusted offense level is 46 for

16   both Counts 1 and 2.  Thus, both are equally serious and count

17   as one unit each under Section 3D1.4(a).

18             The group consisting of Counts 3 and 5, with an

19   adjusted offense level of 38, is eight levels less serious and

20   counts as one-half unit under Section 3D1.4(b).

21             The total number of units, therefore, is

22   two-and-a-half.

23             Pursuant to the table set forth in the guidelines at

24   3D1.4, the offense level applicable to the highest group, which

25   is 46, is to be increased by three levels based on the

1   two-and-a-half units, resulting in a combined offense level of

2   49.

3           Do the parties agree?

4           MS. SHEEHAN-BALCHON:  Yes, Your Honor.

5           MR. SUGHRUE:  Yes, Your Honor.

6           THE COURT:  Now, looking at Chapter 4 enhancements,

7   pursuant to Guidelines Section 4B1.5(b)(1), because Defendant's

8   offenses of conviction are covered sex crimes, neither

9   Section 4B1.1 nor Section 4B1.5(a) applied, and because

10  Defendant engaged in a pattern of sexual activity involving

11  prohibited sexual conduct, the offense level shall be five plus

12  the offense level determined under Chapters 2 and 3 of the

13  sentencing guidelines, which in this case was 49.  Adding the

14  five plus onto it gives us a total of 54.

15          As for adjustment for acceptance of responsibility,

16  the Defendant has clearly demonstrated acceptance of

17  responsibility by pleading guilty and timely notifying

18  authorities of his intention to plead guilty.  The offense

19  level is therefore reduced by three levels.

20          After applying the adjustments, Defendant's total

21  offense level is therefore 51.  However, in a rare case, as

22  this one is, when the total offense level is more than 43, the

23  offense level is to be treated as 43 under Guidelines

24  Chapter 5, Part A, Application Note 2.  And, accordingly, then,

25  Defendant's total offense level is 43.

1          Do counsel agree with what computation?

2          MS. SHEEHAN-BALCHON:  Yes, Your Honor.

3          MR. SUGHRUE:  Yes, Your Honor.

4          THE COURT:  Now, to look at criminal history

5   computation, based upon this Defendant's prior criminal

6   history, the Defendant has a total criminal history score of

7   zero.

8          According to the sentencing table and the sentencing

9   guidelines, a criminal history score of zero establishes a

10  criminal history category of one.

11         Do counsel agree?

12         MS. SHEEHAN-BALCHON:  Yes, Your Honor.

13         MR. SUGHRUE:  Yes, Your Honor.

14         THE COURT:  Next we're going to look at sentencing

15  options.

16         As to imprisonment, pursuant to the statutory

17  provisions, the minimum term of imprisonment which shall be

18  imposed at each of Counts 1 and 2 is not less than 15 years,

19  and the maximum term of imprisonment which may be imposed is

20  not more than 30 years.

21         The maximum term of imprisonment which may be imposed

22  at each of Counts 3 and 5 is not more than 20 years because the

23  offenses involved a prepubescent minor or minors who had not

24  obtained 12 years of age.

25         Pursuant to the guidelines, based upon a total offense

1   level of 43 and a criminal history category of one, the

2   applicable guideline imprisonment range is life imprisonment,

3   which falls within Zone D of the sentencing table.  However,

4   because the statutorily authorized maximum sentence at each of

5   Counts 1, 2, 3 and 5 is less than the applicable guideline

6   range of life, the statutorily authorized maximum sentence of

7   360 months at Counts 1 and Count 2 and 240 months at Counts 3

8   and 5 shall be the guideline sentence.

9        As to the impact of the plea agreement, pursuant to

10  the parties' Rule 11(c)(1)(C) plea agreement, the parties

11  agreed that the appropriate sentence in this case is a term of

12  imprisonment of at least 30 years, but not more than 35 years;

13  a fine up to $250,000; a life term of supervised release; a

14  special assessment of $400; and restitution as determined by

15  the Court.

16       As to supervised release, pursuant to the statutory

17  provisions, the authorized term of supervised release at each

18  of Counts 1, 2, 3 and 5 is five years to life, and multiple

19  terms of supervised release shall run concurrently.

20       Pursuant to the guidelines, the term of supervised

21  release imposed shall be not less than the statutorily required

22  term of supervised release of not less than five years and may

23  be up to life because the offenses of conviction are sex

24  offenses.  Because the offenses are sex offenses, the

25  guidelines recommend a statutory maximum term of supervised

1   release.

2           As to probation, pursuant to the statutory provisions

3   and to the guidelines, Defendant is not eligible for probation

4   at Counts 1 and 2 because probation is expressly precluded by

5   statute for those offenses which carry mandatory minimum terms

6   of imprisonment.  Likewise, under the statute and under the

7   guidelines, Defendant is not eligible for probation at

8   Counts 3 and 5 because he will be sentenced at the same time to

9   a mandatory term of imprisonment at Counts 1 and 2.

10          As to fines, pursuant to the statutory provisions, the

11  maximum authorized fine at each of Counts 1, 2, 3 and 5 is

12  $250,000.  And pursuant to the guidelines, the fine range is

13  50,000 to 500,000.  The Court finds, though, that the Defendant

14  is unable to pay a fine and is not likely to become able to pay

15  any fine.

16          A special assessment of $100 is mandatory at each of

17  Counts 1, 2, 3 and 5.

18          In addition, because Defendant is subject to the

19  provisions of the Justice for Victims of Trafficking Act of

20  2015, an additional special assessment of $5,000 per count is

21  mandatory on any non-indigent Defendant convicted of an offense

22  relating to the sexual exploitation of children.

23          Defendant is also subject to the provisions of Amy,

24  Vickie and Andy Child Pornography Victim Assistance Act of

25  2018, which provides that in addition to any other criminal

penalty, restitution or special assessment not authorized by law, the Court shall assess not more than 17,000 on any person convicted of an offense under 18 United States Code 2252(a)(4) or Section 2252A(a)(5); or not more than 35,000 on any person convicted of any other offense for trafficking in child pornography; or, third, not more than 50,000 on any person convicted of a child pornography production offense.

As to restitution, because Defendant has pled guilty at Counts 2 and 5 to child pornography trafficking offenses as defined in the Code, restitution is mandatory as set forth in Section 2259(b)(2).  Under that section, the Court must determine the full amount of the victims' losses and order restitution in an amount that reflects the Defendant's relative role in the causal process that underlines the victims' losses but which is no less than $3,000.

Restitution is also mandatory pursuant to 18 United States Code Section 3663A.

The denial of federal benefits is not applicable in this case.

As to forfeiture, pursuant to the preliminary order of forfeiture entered by this Court on May 26 of this year, docketed at Document No. 116, and pursuant to 18 United States Code Section 2253(a)(3), Defendant shall forfeit to the United States multiple electronic devices, accessories, documents, and photos as set forth in detail in that criminal

1   forfeiture order.

2          Attorney Sughrue, have you reviewed and discussed with

3   the Defendant the statutory ranges and the sentencing guideline

4   ranges that I just recited?

5          MR. SUGHRUE:  Yes, Your Honor.

6          THE COURT:  Have you also discussed and reviewed with

7   your client sentencing factors under Section 3553(a)?

8          MR. SUGHRUE:  Yes, Your Honor.

9          THE COURT:  Mr. Martin, have you reviewed and

10   discussed with your attorney the statutory ranges and guideline

11   sentencing ranges I just detailed?

12          THE DEFENDANT:  Yes, ma'am.

13          THE COURT:  And did you also review and discuss with

14   your attorney the sentencing factors under 18 United States

15   Code Section 3553(a)?

16          THE DEFENDANT:  Yes, ma'am.

17          THE COURT:  I'll ask at this time if there are any

18   other materials from the parties that the Court should be made

19   aware of?

20          MS. SHEEHAN-BALCHON:  Your Honor, the Government

21   supplied the Court today with victim impact statements.  There

22   were three in total, Minor A and her two guardians.  I also

23   provided that copy to Attorney Sughrue.

24          THE COURT:  Any further documents that the defense

25   would like the Court to see?

1          MR. SUGHRUE:  No, Your Honor.

2          THE COURT:  Okay.  Attorney Sughrue, do you have any

3   objections to the factual content or the calculations in the

4   presentence investigation report?

5          MR. SUGHRUE:  No, Your Honor.

6          THE COURT:  And do you have any objections or

7   corrections that need to be made to this Court's tentative

8   findings and rulings?

9          MR. SUGHRUE:  Yes, Your Honor.

10          We do object, for the purposes of the mandatory

11   special assessments.  Not, obviously, to the $100 at each of

12   the four counts of conviction, that's mandatory.  But we do

13   object to the $5,000 per count under the Justice for Victims of

14   Trafficking Act of 2015.

15          We also object to the Amy, Vickie and Andy Child

16   Pornography Victim Assistance Act of 2018.  We object to any

17   restitution or -- we object to any assessments against my

18   client because he is indigent.  He has been incarcerated since

19   2019.  He has a state case he is still fighting with a public

20   defender in Clearfield County.  I am court-appointed to

21   represent him.  The sentence that has been agreed to at a

22   minimum today puts him in prison until he's about 70 years old

23   or so.  His financial situation is not expected to change any.

24          In addition, with the mandatory, at least minimum

25   criminal restitution of $3,000 will be -- at a minimum will be

1    required of Mr. Martin, which will be taken out of his earnings

2    while he is in BOP for the next period of time; and so I would

3    submit that he is indigent for the purposes of applying any of

4    those assessments to him on this matter.

5            THE COURT:  Okay.  The Government's position on the

6    indigency of the Defendant as to those two, the JVTA and the

7    AVAA?

8            MS. SHEEHAN-BALCHON:  Your Honor, I concur that

9    Mr. Martin is indigent and has no hope of changing that

10   situation.

11           THE COURT:  Okay.  Then with that request and proffer

12   of indigency, as well as no objection from the United States,

13   the Court will not assess the monetary assessments under the

14   Justice for Victims of Trafficking Act of 2015 and also will

15   not assess the assessment under the Amy, Vickie and Andy Child

16   Pornography Victim Assistance Act, finding that this Defendant

17   is indigent.

18           I will note, Attorney Sughrue, in the Court's

19   tentative findings and rulings, the Court does address in

20   laying out those mandatory special assessments that it only

21   apply to non-indigent defendants.

22           So with the argument you've made and the finding and

23   the ruling of the Court, do you have any further objections to

24   this Court's tentative findings and rulings?

25           MR. SUGHRUE:  No.  No, Your Honor, we do not.

1          THE COURT:  Okay.  Attorney Sheehan-Balchon, does the

2    Government have any objections to the factual content or

3    calculations in the presentence report?

4          MS. SHEEHAN-BALCHON:  No, Your Honor.

5          THE COURT:  And any objections or corrections to this

6    Court's tentative findings and rulings?

7          MS. SHEEHAN-BALCHON:  None, Your Honor.

8          THE COURT:  Okay.  Then the Court hereby adopts the

9    presentence investigation report, the addendum thereto, and

10   recognizes as final the tentative findings and rulings of this

11   Court.

12         Now, at the plea hearing in this case the Court

13   deferred a decision on whether to accept or reject the

14   agreed-upon sentence range in the plea agreement until it had

15   reviewed the presentence report and the addendum.

16         The Court will now accept the plea agreement and the

17   agreed-upon disposition range, which will be included in the

18   sentencing judgment of this Court.

19         Now, Attorney Sughrue, do you have any motions for

20   departure from the guidelines?

21         MR. SUGHRUE:  No, Your Honor.

22         THE COURT:  And, Attorney Sheehan-Balchon, do you have

23   any motions for departure from the guidelines?

24         MS. SHEEHAN-BALCHON:  No, Your Honor.

25         THE COURT:  Attorney Sughrue, this would be the time,

1    then, for any arguments you want to make in favor of where this

2    Court should sentence your client on the agreed-upon range

3    that's in the plea agreement.  I'll hear argument at this time.

4              MR. SUGHRUE:  Thank you, Your Honor.

5              This case is not easy to prosecute; this case not easy

6    to defend.  But when it boils down, it's about a balance of

7    interests.

8              In this case my client is defending against two

9    fronts, one in Clearfield County where he was originally

10   arrested in 2019 and charged with 1500 of 1800-some odd counts.

11   Soon thereafter the Federal Government adopted what I will

12   characterize as the child pornography possession and production

13   parts of those state offenses.  But the other state-related

14   child victim or minor A charges still remain in Clearfield

15   County.

16             So I would submit that these interests that the

17   Federal Government stepped in to take this section of the

18   crimes are basically fully resolved through the Clearfield

19   County case.  There is no federal interest that is not

20   protected by Clearfield County's prosecution.  At the same time

21   there is no state interest that the Federal Government is not

22   actually preserving as well.

23             In Clearfield County we have a written plea agreement

24   with the District Attorney's office for a sentence of 20 to 40

25   years in the Pennsylvania Department of Corrections.  As you

1   may or may not be aware, that sentence is basically a sentence

2   of 40 years in prison.  And he will come up for parole at no

3   later than his -- one-half his maximum, which is 20 years.  And

4   so he also, it's my understanding, has to be present in the

5   Pennsylvania DOC to be eligible for that parole.

6          After this matter resolves, I will be notifying the

7   Clearfield County authorities that their matter can proceed,

8   after which time I expect Judge Cherry to accept the plea of

9   guilty and perhaps after a presentence investigation will

10  sentence my client to the 20-to-40 years that is to be

11  concurrent to the sentence of this Court.

12         The District Attorney's office at that time had a --

13  or during this negotiation really had, in my opinion, one --

14  one point that was important to them is that Mr. Martin be

15  returned to Pennsylvania Department of Corrections to be seen

16  by the parole board to make sure that he has been as

17  rehabilitated as he can be and that he's given the resources

18  necessary for an effective and successful re-entry into

19  society.

20         A 30-year sentence does that.  A 30-year sentence in

21  the Bureau of Prisons, if Mr. Martin, one, survives it, will --

22  and earns all of his good time, will result in a 25-year

23  sentence.  We did flip his custody over to federal custody on

24  the record when Clearfield County granted him an unsecured bail

25  after our detention hearing in this matter.  And so he does

1   have some time to give back to the state that the Bureau of

2   Prisons will not take.

3          And so I submit that the 30-year sentence with -- if

4   he earns his good time, ends up being a 25-year sentence, is

5   only half of the battle here.  After he's released from the

6   Bureau of Prisons, at whatever time that may be, he will have

7   to be returned, when he's much older in life, well into his

8   sixties, be transferred to a new corrections facility handled

9   by the Pennsylvania Department of Corrections.  He'll have to

10  undergo a whole new learning, a whole new getting used to his

11  surroundings, a whole new learning what it takes to work on the

12  books, what it takes to communicate with family, loved ones,

13  and those sorts of things.

14         Only then, once he's processed in, will he then come

15  up to the parole board.  And it's -- should not be assumed in

16  my opinion that he will get paroled at his first opportunity.

17  We hope that it will be.  We hope that he'll have 25 years of

18  good behavior and programming and education and counseling

19  through the Bureau of Prisons that shows that he is a great

20  candidate for parole.  However, I don't think anyone sitting in

21  this courtroom knows what will happen 25 years from today with

22  the parole system of Pennsylvania.

23         So I would submit that really we have to look back at

24  the balancing of the interests.  And the fact that:  Is there a

25  federal interest that the 20-to-40-year sentence doesn't

1    protect?  And the answer to that I would submit is no.  Is

2    there a state interest that the 30-year sentence or 35-year

3    sentence of the federal BOP not protect?  And the answer is no.

4           So in the end I would submit that a 30-year sentence

5    is the statutory maximum sentence, is the sentence that's

6    consistent with the presentence report, and it's the sentence

7    for which we are asking this Court -- to which we are asking

8    this Court to sentence Mr. Martin.

9           I would ask that he -- as you've already said in your

10   tentative findings, he's not eligible -- or he's unable to pay

11   a fine, and I would submit any proper use of any resources that

12   Mr. Martin would have is more properly paid out to restitution

13   of the identified victims in this matter.

14          The -- this crime is bad.  It is horrific.  The

15   United States can stand up and describe for you how bad it is

16   in whatever is contained.  My client has admitted his conduct

17   in this case.  He has admitted guilt to those charges.  Those

18   are all things that we've already come to terms with.

19          What we would ask Your Honor is now focus on what

20   needs to happen for the future; and I would submit that under

21   the 3553(a) factors, that a 30-year sentence is sufficient but

22   not greater than necessary to achieve the goals of sentencing,

23   especially in light of the duplicative overlapping and totally

24   inclusive state interests that are going to be protected when

25   he gets sentenced to the 20-to-40-year sentence.

1         And if this Court has any doubt on that, on the state

2    court docket you will see that we did have a status conference

3    that I attended, whereupon District Attorney Sayers, Public

4    Defender Dell and myself appeared, at which time the Court

5    indicated really different than what Clearfield County normally

6    does in the court.  The Court did indicate that they would

7    agree to that 20-to-40-year sentence concurrent to the

8    sentence—of.

9         So I would submit to you that the earlier that my

10   client gets to the Pennsylvania Department of Corrections is

11   the earlier that the state's interest that needs to be

12   protected most can be protected by having Mr. Martin evaluated

13   by the parole board for determination of whether or not he is a

14   candidate to re-enter society.

15        If I could have just one moment --

16   (Off the record discussion between the Defendant and his

17   counsel.)

18        MR. SUGHRUE:  As it concerns a recommendation for

19   placement, Your Honor, we would request that -- obviously it's

20   only a recommendation, and the Bureau of Prisons will do their

21   analysis -- but my client's saying that SCI Elkton in Ohio has

22   the programs necessary and the expertise in helping provide

23   Mr. Martin with counseling that he's going to need -- that he's

24   going to be needing and most likely ordered by this Court.

25        Additionally, they have a fair record of keeping

1    people with these convictions safe in their institution.  As I

2    would note, that the Cambria County jail failed in that in the

3    last couple weeks, and that someone on my client's pod with his

4    type of charges required a hospital stay after a sound beating

5    by a person who has not been arrested by the state as of yet.

6            It is my understanding that he suffered, at a minimum,

7    a concussion and some sort of brain injury.  That person is now

8    out of the hospital, in fact in prison.  But the offender isn't

9    even in the hole two weeks later, two-and-a-half weeks later.

10           So I would submit that taking all those things into

11   account, that a 30-year-sentence is sufficient but not greater

12   than necessary to achieve the goals of sentencing, lifetime

13   supervised release, no fine, and recommendation that he be

14   placed Elkton.

15           Thank you.

16           THE COURT:  Mr. Martin, I'll hear from you at this

17   time.

18           THE DEFENDANT:  I just want to apologize for

19   everything I've done.  And that I'm -- I would like to go

20   Elkton because it's an available facility, not -- I've been

21   having problems with breathing and everything because I got

22   COVID twice in Cambria County and I went to the hospital one

23   time.

24           And -- I'm just sorry for everything.

25           THE COURT:  Attorney Sheehan-Balchon?

1          MS. SHEEHAN-BALCHON:  Your Honor, the Court obviously

2    has heard through the change of plea hearing, the sentencing

3    memorandum submitted, the offense conduct submitted in the

4    PSIR, so I don't -- I don't need to go through the Court again

5    with the horrific and grotesque factual basis of this case.

6    However, I would like to just point out a few things that we're

7    asking the Court to consider when fashioning a sentence.

8          First, you received the victim impact statements today

9    from the victim from Counts 1 and 2.  Her age at the earliest

10   known assault and attack was three years old.  She's currently

11   seven years old.  She suffers from PTSD.  She has night

12   terrors.  She has to be medicated.  You hope -- if there's any

13   hope in these kind of cases, you hope that these tender victims

14   don't remember, but she clearly does based on her impact

15   statement which, for the record, is caricature drawings of her

16   crying.

17         Please also consider the impact statements of her

18   guardians.  They say no one ever gets over something like this.

19   Everyone in the community knows.  Being in the public is very

20   difficult.  One of the guardians is 63 years old, and she prays

21   that she's going to survive to raise this child to adulthood.

22   The entire family has suffered from stress and their life has

23   been seriously impacted.  They want to move out of this area to

24   avoid the public scrutiny, but they are financially unable to.

25         They have abandoned their restitution request,

1    Your Honor, because they're overwhelmed.  They have more

2    interest in justice submitted out by this Court in the

3    sentence.  They cannot attend court hearings because they are

4    not comfortable being in the same room with the Defendant.

5    They have worked very hard to normalize Minor A's life.

6            They have been consulted about the plea agreement and

7    they agree.  They agree to lifetime supervision because they

8    want this victim to be firmly in her adulthood years before

9    Mr. Martin or Miss Downs is released.

10           With me today, Your Honor, is Agent David Coleman.

11   The point that I'd like to make through Agent Coleman -- and if

12   the Court permits, I'll do it by proffer, and then I will offer

13   the witness for cross examination if it's necessary, or

14   examination by the Court.

15           There was a search warrant conducted, as the Court

16   knows, at the residence of Mr. Martin in January of 2019.  Ten

17   months later he's actually arrested on the charges.  He was

18   free in the community during that time.  When he is arrested in

19   November, Agent Coleman would tell the Court they find on his

20   person a cellphone that 19 days prior to his arrest he

21   downloaded six videos containing sexual exploitation of

22   children, including the video of Minor A being raped.

23           Agent Coleman will tell the Court that this is

24   significant not only to assess his dangerousness to the

25   community, but that he in some cloud storage account that has

1  not been located saved the rape video of that three-year-old

2  child and accessed it and downloaded it at his will.  That

3  account has not been identified.  Other people who are able to

4  access that account have not been identified.

5          There has been some argument in this case that the

6  video of this child being raped by the Defendant has not been

7  made commercially available and that that should be a factor of

8  mitigation.

9          Mr. Martin behaved exactly in the opposite manner.

10  Not only did he use Tumblr, which is an Internet-based sharing

11  platform, to post an image of this same child masturbating him,

12  he also discussed with his co-defendant about sending the video

13  to a third party, a friend of the family.

14          There's also evidence to suggest, as Agent Coleman

15  would testify, that Mr. Martin sent child pornographic videos

16  and photos to Miss Downs and to this third party family friend

17  in November of 2018.  Downs then exchanged another image back.

18  They shared it freely.  So their argument or the concept that

19  the video of the victim's rape or the victim's images are not

20  available is completely incredible.

21          Count 2 of this indictment, Your Honor, is the image

22  that Mr. Martin posted on Tumblr of this same child.

23          Mr. Martin is a depraved predator.  He's caused

24  physical violence to a very young child in his care, and he's

25  caused a lifetime of psychological damage as well.

1          The United States is asking the Court's analysis of

2   the 3553 factors, they strongly support the 35-year sentence,

3   and I ask the Court to impose it.  The interests of the Federal

4   Government here, Your Honor, are clearly separate and distinct

5   from those in Clearfield County.  This Defendant not only

6   repeatedly raped this child and sexually assaulted this child,

7   but he documented it for eternity.

8          Thank you.

9          THE COURT:  Attorney Sughrue, do you have any further

10  comments to make on your client's behalf?

11         MR. SUGHRUE:  I have no questions for Agent Coleman

12  and no further argument.

13         THE COURT:  Attorney Sughrue, do you know of any

14  reason other than those previously discussed why sentence

15  should not now be imposed on this Defendant?

16         MR. SUGHRUE:  No, Your Honor.

17         THE COURT:  I will now impose sentence.

18         Pursuant to the Sentencing Reform Act of 1984, it is

19  the judgment of the Court that the Defendant Jackson Curtis

20  Martin, III, is hereby committed to the custody of the Bureau

21  of Prisons to be imprisoned for a term of 420 months,

22  consisting of 360 months at each of Counts 1 and 2, to be

23  served concurrently to one another, and a term of imprisonment

24  of 60 months at each of Counts 3 and 5, to be served

25  concurrently to one another and consecutive to the 360-month

1   concurrent terms at Counts 1 and 2.

2          This Court has also ordered and shall order mandatory

3   restitution to the victims in this case, and that is to be

4   determined by the Court.

5          I will hear from the United States as to how

6   restitution is to be treated in this case.

7          MS. SHEEHAN-BALCHON:  Your Honor, at this point I'm

8   making a motion to bifurcate the restitution hearing, and

9   myself and Attorney Sughrue will address that issue and advise

10  the Court and Probation.

11         THE COURT:  Okay.  Attorney Sughrue, is that correct?

12         MR. SUGHRUE:  It's correct, and we agree.

13         THE COURT:  The Court will grant the request for a

14  bifurcated sentencing hearing; and at that hearing, then, the

15  Court will order the mandatory restitution for each of the

16  victims in this case.

17         Now, upon release from your 420 months of

18  imprisonment, the Defendant shall be placed on a term of

19  supervised release for a term of life at each of Counts 1, 2, 3

20  and 5, to run concurrently.

21         Within 72 hours of release from the custody of the

22  Bureau of Prisons, the Defendant shall report in person to the

23  Probation Office in the district to which the Defendant is

24  released.

25         While on supervised release, the Defendant shall not

1   commit another federal, state or local crime; shall comply with

2   the standard conditions of supervision recommended by the

3   United States Sentencing Commission and adopted by this Court;

4   and shall comply with the following additional conditions.

5          The Defendant shall not illegally possess a controlled

6   substance.

7          The Defendant shall not possess a firearm, ammunition,

8   destructive device or any other dangerous weapon.

9          The Defendant shall have no contact by any means

10  including but not limited to direct, indirect, or third party

11  contact, whether electronic, in-person, mail, telephonic or

12  through social media or online postings, with any of the minor

13  victims in this case or any family members of the victims.

14         However, contact with Amanda Downs is permitted about

15  matters unrelated to the case and only if Amanda Downs consents

16  to such communication through counsel, notification to the US

17  Attorney's Office, and the United States Probation Office.

18         The Defendant shall report any change of address

19  within 30 days to the United States Attorney's Office while any

20  portion of the restitution remains outstanding.

21         The Defendant is prohibited from incurring new credit

22  charges or opening additional lines of credit without prior

23  written approval of the probation officer.

24         The Defendant shall participate in a mental health

25  assessment and/or treatment program approved by the probation

officer until such time as the Defendant is released from the program by the Court.  The Defendant shall be required to contribute to the costs of services in an amount determined by the probation officer.  These costs shall not exceed the actual cost of service.  The Probation Office is authorized to release the Defendant's presentence report to the treatment provider if so requested.

The Defendant shall pay restitution as will be ordered in the bifurcation by this Court that is imposed by that judgment and that remains unpaid at the commencement of the term of supervised release at a rate of not less than ten percent of his gross monthly earnings.  The first payment shall be due within 30 days from the Defendant's release from the custody of the Bureau of Prisons.

The Defendant shall participate in a program of testing and, if necessary, treatment for substance abuse, said program to be approved by the probation officer until such time as the Defendant is released from the program by the Court. Further, the Defendant shall be required to contribute to the costs of services for any such treatment in an amount determined by the probation officer, but not to exceed the actual cost.

The Defendant shall submit to one drug urinalysis within 15 days after being placed on supervision and at least two periodic tests thereafter.

1        It is further ordered that the Defendant shall not
2   intentionally purchase, possess and/or use any substances
3   designed to simulate or alter in any way the Defendant's own
4   urine specimen.  In addition, the Defendant shall not purchase,
5   possess, and/or use any device designed to be used for the
6   submission of a third party urine specimen.

7        The Defendant shall provide the probation officer with
8   access to any requested financial information.

9        The Defendant shall cooperate in the collection of DNA
10   as directed by the probation officer pursuant to the Code of
11   Federal Regulations, the DNA Fingerprint Act of 2005, and the
12   Adam Walsh Child Protection and Safety Act of 2006.

13        The Defendant is permitted to possess or use a
14   computer and is allowed access to the Internet.  However, the
15   Defendant is not permitted to use a computer or other
16   electronic communication or data storage devices, including a
17   cellphone, to access child pornography or to communicate with
18   any individual or group for the purpose of promoting sexual
19   relations with children.

20        The Defendant shall consent to the installation of any
21   hardware or software to monitor any computer or other
22   electronic communication or data storage devices used by the
23   Defendant to confirm compliance with this condition.  The
24   Defendant shall pay the monitoring costs as directed by the
25   probation or pretrial services officer.

1       Furthermore, the Defendant shall consent to periodic

2  unannounced examination by the probation or pretrial services

3  officer of any computers, cellphones, or other electronic

4  communication or data storage devices that the Defendant has

5  access to to confirm compliance with this condition.

6       Additionally, the Defendant shall consent to the

7  seizure and removal of hardware and data storage media for

8  further analysis by the probation or pretrial services officer

9  based upon a reasonable suspicion of a violation of the

10  conditions imposed in this case or based upon reasonable

11  suspicion of unlawful conduct by the Defendant.

12       Failure to submit to the monitoring or search of

13  computers and other electronic communication or data storage

14  devices used by the Defendant may be grounds for revocation.

15       If the Defendant's employment requires the use of a

16  computer, the Defendant may use a computer in connection with

17  the employment approved by the probation or pretrial services

18  officer, provided the Defendant notifies their employer of the

19  nature of the conviction or charge.  The probation or pretrial

20  services officer shall confirm compliance with this

21  notification requirement.

22       The Defendant shall provide the US Probation Office

23  with accurate information about the Defendant's entire computer

24  system, hardware or software, and other electronic

25  communication or data storage devices or media to include all

passwords used and the name of the Internet service providers.
The Defendant also shall abide by the provisions of the
computer restrictions and monitoring program approved by the
Court.

The Defendant shall submit his person, property,
house, residence, vehicle, papers, business, or place of
employment to a search conducted by a United States Probation
or Pretrial Services officer at a reasonable time and in a
reasonable manner based upon reasonable suspicion of contraband
or evidence of a violation of a condition of supervision.
Failure to submit to a search may be grounds for revocation.
The Defendant shall inform any other residents that the
premises may be subject to searches pursuant to this condition.

The Defendant shall not possess or access with intent
to view any materials including pictures, photographs, books,
writings, drawings, videos, or video games depicting and/or
describing child pornography as defined in 18 United States
Code Section 2256(8) or obscene visual representations of the
sexual abuse of children as defined in 18 United States Code
Section 1466A.

With the exception of brief unanticipated and
incidental contacts to include the Defendant's place of
employment and/or volunteer activity, the Defendant shall not
associate with children under the age of 18 except in the
presence of an adult who is aware of the nature of the

1  Defendant's history, characteristics and/or convictions, and

2  has been approved by the probation officer.

3       The Defendant shall participate in a mental health

4  and/or sex offender treatment program approved by the probation

5  officer until such time as the Defendant is released from the

6  program by the Court.  The Defendant shall abide by all program

7  rules, requirements and conditions of the sex offender

8  treatment program, including submission to polygraph testing.

9  Said testing shall continue throughout the term of supervision

10 in order to monitor and ensure compliance with the conditions

11 of supervision.

12      Further, the Defendant shall be required to contribute

13 to the costs of services for any such treatment in an amount

14 determined by the probation officer but not to exceed the

15 actual cost.

16      The Probation Office is authorized to release the

17 Defendant's presentence report to the treatment provider if so

18 requested.

19      As required by 18 United States Code Sections

20 3563(a)(8) and 3583(d) and the Sex Offender Registration and

21 Notification Act, the Defendant shall report the address where

22 he will reside and any subsequent change of residence to the

23 probation officer responsible for Defendant's supervision and,

24 further, shall register as a convicted sex offender in any

25 state where he resides, is employed, carries on a vocation, or

1   is a student.

2          The Defendant shall not frequent and/or loiter within

3   500 feet of places where children congregate on a regular basis

4   such as, but not limited to, schools, playgrounds, children's

5   toy and/or clothing stores, video arcades, day care centers,

6   swimming pools, zoos, amusement parks or other places primarily

7   used or that can reasonably be expected to be used by children

8   under the age of 18 without prior permission of the probation

9   officer.

10          The Defendant shall not photograph and/or videotape

11   any children under the age of 18 without the written consent of

12   their parent or legal guardian who is aware of the nature of

13   Defendant's history, characteristics and/or convictions and has

14   been approved by the probation officer.

15          The Defendant shall forfeit to the United States all

16   of the 32 items specifically detailed in this Court's

17   preliminary order of criminal forfeiture which was filed on

18   May 26th of this year at Document No. 116.

19          The Court finds that the Defendant does not have the

20   ability to pay a fine.  Therefore, imposition of a fine is

21   waived in this case.

22          It is further ordered that the Defendant shall pay to

23   the United States a mandatory special assessment of $400 which

24   shall be paid to the United States District Court Clerk

25   forthwith.

1        The Court further finds that the Defendant is

2   financially unable to pay the Justice for Victims of

3   Trafficking Act of 2015 and the Amy, Vickie and Andy Child

4   Pornography Victim Assistance Act assessments.  Therefore,

5   imposition of these assessments are waived.

6        It is also the recommendation of this Court that the

7   Defendant be placed at the Elkton, Ohio, Bureau of Prisons

8   facility.

9        This sentence is imposed after consideration of each

10   of the factors set forth in 18 United States Code

11   Section 3553(a) and those factors support your sentence as

12   follows.

13        As to Factor One, the nature and circumstances of

14   these offenses include the following.  Defendant has pled

15   guilty to two counts of production of material depicting the

16   sexual exploitation of a minor and two counts of possession of

17   materials depicting the sexual exploitation of a minor.

18        The evidence revealed that Defendant produced sexually

19   explicit images of his then three-year-old stepdaughter engaged

20   in sexual conduct with him, and also this case involved the

21   Defendant possessing 2,286 images of child sex abuse material.

22        As to the history and characteristics of this

23   Defendant, Mr. Martin is 46 years old.  He married his

24   co-defendant Amanda Downs in July of 2019.  He has no

25   biological children, but his wife has a child, who is the minor

1    victim in the offenses in this case.

2              Mr. Martin suffers from breathing issues that are

3    residual effects from contracting COVID-19 on two occasions.

4    He also has high blood pleasure and kidney stones and has had

5    surgery to repair a hernia in the past.  He's also been

6    diagnosed with depression and anxiety.

7              Mr. Martin reports that he began using marijuana at

8    age 18 and last used it in 2017, and at that time he states he

9    was using it occasionally.  However, he has never participated

10   in substance abuse treatment.

11             He did complete the tenth grade and has earned his

12   GED.  He attended Patrick Henry Community College in

13   Martinsville, North Carolina, for one year, but no degree was

14   obtained.

15             As to a work history, he worked at Autozone from 2016

16   to 2019; at Carpet One from 2012 to 2015; and at an unknown

17   furniture store in 2012, all in Clearfield.

18             As to Factor Number Two, Mr. Martin, your offenses are

19   reprehensible and are serious violations of federal law.  You

20   have inflicted irreparable harm upon your stepdaughter as well

21   as endangered her in the community.  Your sentence is at the

22   high end of the range, as that reflects the seriousness and

23   grotesque nature of your offenses.  The need for your sentence

24   to reflect punishment and deterrence is satisfied by 420 months

25   of imprisonment.

1          With 420 months of imprisonment, your incarceration
2     reflects the need for you to be punished as well as the need to
3     remove you from society for a long period of time, which will
4     hopefully be sufficient to deter future violations.

5          A period of supervised release for the rest of your
6     life is clearly justified, and the conditions of your
7     supervised release will hopefully serve to deter any similar
8     criminal conduct by you in the future.

9          As to Factor Number Three, the maximum possible
10    sentence the Court is allowed by statute to impose is not less
11    than 15 years and not more than 30 years of imprisonment at
12    each of Counts 1 and 2, and not more than 20 years at each of
13    Counts 3 and 5.

14         The sentencing guidelines, which are advisory and one
15    factor to be considered, provide for the statutorily authorized
16    maximum statutory sentence of 360 months at Counts 1 and 2 and
17    240 months at Counts 3 and 5, and that was because the advisory
18    guideline range was life, which had to be limited by the
19    statutory ranges.

20         The Court has chosen to impose a sentence at the high
21    end of the range, which was agreed to in the Rule 11(c)(1)(C)
22    plea agreement, as I believe a sentence of 420 months of
23    imprisonment reflects the extreme seriousness of your crime.  A
24    term of supervised release for life shall be served after your
25    imprisonment.  You do not have the ability to pay a fine, so

one was not imposed.  The special assessment of $400 is
mandatory, and restitution will be determined at the bifurcated
sentencing hearing.

As to Factor Four and Factor Five, I find that the
sentencing guidelines provide a fair gauge of the amount of
imprisonment and supervised release that are appropriate for
your punishment, including considerations of your criminal and
personal history.  And that's the guideline range that had to
be limited by the statutorily required mandatory sentences.
Therefore, a term of 420 months of imprisonment is sufficient
but not greater than necessary to comply with the statutory
purposes of sentencing.

Your sentence is within that range, as it was agreed
to by the parties, and it reflects the Court's satisfaction
that 420 months of imprisonment is an appropriate and just
sentence.

As to Factor Six, in imposing a sentence of 420 months
of imprisonment, the guidelines as applied to your
circumstances present an instance where this sentence imposed
is proper.  Any disparity with others sentenced for similar
crimes is justified in light of several factors and specific
circumstances surrounding you and your crimes.

The supervised release term of life is also within the
guideline range and is warranted because it is readily apparent
that you are in serious need of counseling and lifetime

1    supervision.  As stated, the supervised release will hopefully
2    assist you in re-integrating successfully into society after
3    your 420 months of imprisonment.
4           As to Factor Seven, as stated, because you have pled
5    guilty to Counts 3 and 5, which are child pornography
6    trafficking offenses, restitution is mandatory as set forth in
7    18 United States Code Section 2259(b)(2).  Under that section,
8    the Court must still yet determine the full amount of the
9    victims' losses and will order restitution in an amount that
10   reflects your role in the causal process that underlines these
11   victims' losses, but which is no less than $3,000.
12          Restitution is also mandatory pursuant to 18 United
13   States Code Section 3663A.
14          The Defendant has been federally detained since
15   March 23rd, 2020, and is not a candidate for voluntary
16   surrender.
17          Mr. Martin, you can appeal your conviction if you
18   believe your guilty plea was somehow unlawful or involuntary or
19   if there's some other fundamental defect in the proceedings
20   that was not waived by your guilty plea.
21          You also have a statutory right to appeal your
22   sentence under certain circumstances, particularly if you think
23   this sentence is contrary to law.
24          However, a Defendant may waive those rights as part of
25   a plea agreement, and you have entered into a plea agreement

1   which waived some or all of your rights to appeal the sentence
2   itself.  Such waivers are generally enforceable; but if you
3   believe the waiver is unenforceable, you can present that
4   theory to the appellate court.
5           If you cannot afford the costs of an appeal, you have
6   the right to request to proceed with your appeal in forma
7   pauperis.  The Clerk of the Court will prepare and file a
8   notice of appeal upon your request.  With very few exceptions,
9   any notice of appeal must be filed within 14 days of the entry
10  of this judgment.
11          Attorney Sughrue, I know you are aware of your
12  continuing duties and responsibilities as Mr. Martin's
13  counselor in any appellate process, is that correct?
14          MR. SUGHRUE:  Yes, Your Honor.
15          THE COURT:  Is there anything else that counsel wish
16  to address at this time?
17          MS. SHEEHAN-BALCHON:  No, Your Honor.
18          MR. SUGHRUE:  No, Your Honor.
19          THE COURT:  Mr. Martin, I do have to take a few
20  minutes.
21          I've been involved with the criminal justice system
22  for almost 30 years.  Prior to taking the bench, I was
23  exclusively working in the criminal justice system as a
24  prosecutor for many, many years and also as defense counsel.
25  And I can tell you in all of those years there has nothing been

1   more appalling, more grotesque, more disgusting and more

2   heinous than the factual basis that I heard from the

3   United States during the sentence -- excuse me, during your

4   plea hearing and what I read in that presentence report.

5          I have to say that the advisory guideline range of

6   lifetime imprisonment is probably what is exactly appropriate

7   for you.  The fact that the statutory maximums prohibit that

8   advisory sentencing guideline range is probably the only

9   reason -- or one of the only reasons that I would not want to

10  sentence you to life so that you could never be around any

11  child again.

12         It took me a long time and it was a hard process for

13  me to determine whether or not I would even accept the 30-to-35

14  year range that was the agreed-upon range by counsel in this

15  case.  And I'll tell you, I came real close to not accepting it

16  because I could -- under the statutorily imposed ranges, I

17  could have given you up to 100 years under the statute, because

18  that's what's permitted by your four pleas of guilty to the

19  four counts of this indictment.

20         Sir, I cannot put in more strong terms the disgust

21  this Court has for you and your behaviors of what you did to

22  your innocent, three-year-old stepdaughter and the other

23  victims in the more than 2200 pictures and videos that you had

24  of child pornography.

25         And frankly, sir, when you had the chance today to

1    apologize, the only thing you could muster is:  I apologize for

2    everything and I really want to go Elkton because I have

3    breathing problems?  Further appalling and disgust from this

4    Court towards you.

5          You can roll your eyes at me, I don't care.  Like I

6    said, if -- I thought long and hard, I thought real seriously

7    about giving you more than 420 months.  And I hope each and

8    every day of that 420 months that you're serving in federal

9    prison, you think long and hard about the disgusting behavior

10   you inflicted on these young, innocent children.  And I do hope

11   that at some point in those 420 months you are able to get some

12   type of training or counseling that will help you with your

13   disgusting behaviors.

14         That's all.  This hearing is adjourned.

15     (Hearing adjourned.)

16

17                    C E R T I F I C A T E

18   I, Shirley Ann Hall, certify that the foregoing is a correct

19   transcript for the record of proceedings in the above-titled

20   matter.

21

22

23                         s/Shirley Ann Hall
                           Shirley Ann Hall, RDR, CRR
24                         Official Court Reporter

25